Marilyn BENISHEK,
Plaintiff–Appellant,

v.

Scott CODY, Individually, and Cody's Pharmacy, Inc., A Corporation, Defendants–Appellees.

No. 88–105.

Court of Appeals of Iowa.

March 16, 1989.

Eugene J. Kopecky of Ackley, Kopecky & Kingery, Cedar Rapids, for plaintiff-appellant.

Richard G. Hileman, Jr., of Simmons, Perrine, Albright & Ellwood, Cedar Rapids, for defendants-appellees.

Considered by OXBERGER, C.J., and SCHLEGEL and HAYDEN, JJ.

SCHLEGEL, Judge.

Plaintiff appeals the ruling of the district court which granted defendants' motion for summary judgment. Plaintiff had brought claims of wrongful discharge, intentional infliction of emotional distress, and defamation based on her termination from employment after her employer accused her of embezzlement. Plaintiff claims the district court erred in granting defendants' motion for summary judgment regarding her cause of action for: 1) wrongful discharge from employment; 2) intentional infliction of emotional distress; and 3) defamation.

Plaintiff Marilyn Benishek was employed by Cody's Pharmacy, Inc., which was owned by defendant Scott Cody and his wife. Benishek had been an employee of the pharmacy and its predecessor for almost forty years. On March 20, 1986, Cody informed Benishek and another employee, Kathryn Fish, that he believed someone had embezzled money from the pharmacy. He gave the two employees two weeks to tell him who had taken the money or he would terminate both of them. On April 3, 1986, Cody discharged Benishek and Fish. He stated that if the guilt of one were established he would rehire the other one. Benishek then brought this suit, claiming wrongful discharge, intentional infliction of emotional distress, and defamation. Defendants filed a motion for summary judgment and the district court granted the motion.

The district court determined that Benishek was an at-will employee, and could be discharged for any reason or for no reason at all. The court found that Benishek's termination was not based on reasons contrary to clearly defined public policy, and thus, summary judgment for defendants was appropriate. Benishek appeals this ruling.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). The burden of showing the nonexistence of a material fact is on the moving party. Every legitimate inference that reasonably can be deduced from the evidence should be afforded the resisting party, and a fact question is generated if reasonable minds can differ on how the issue should be resolved. *Northrup v. Farmland Industries, Inc.*, 372 N.W.2d 193, 195 (Iowa 1985) (citations omitted).

I. *Wrongful Discharge.* Benishek first contends that the trial court erred in granting defendants' motion for summary judgment based upon her claim of wrongful discharge. Benishek apparently concedes that she is an "at will" employee, *see Abrisz v. Pulley Freight Lines, Inc.*, 270 N.W.2d 454, 455 (Iowa 1978), however, she argues that one of two exceptions to the at-will doctrine apply to the facts of this case.

The first alleged exception is based upon Benishek's claim that "a fact finder could reasonably find that there was in existence an implied employment agreement for life or until retirement," despite the fact that she admitted she had neither a written nor oral contract of employment with defendants. Plaintiff claims, however, that based upon the fact that she provided numerous services for Cody with-

out compensation, worked overtime, and was a good employee, she anticipated employment for life. As a general rule, "contracts expressly offering lifetime *or permanent employment or which a trier of fact has interpreted as offering such employment based on extrinsic evidence will be interpreted as indefinite and terminable at will in the absence of some executed consideration in addition to the services to be rendered."* *Wolfe v. Graether*, 389 N.W.2d 643, 652 (Iowa 1986) (emphasis added). *See also Stauter v. Walnut Grove Products*, 188 N.W.2d 305, 311 (Iowa 1971). The question of what constitutes sufficient additional consideration is to be determined on a case-by-case basis. *Albert v. Davenport Osteopathic Hosp.*, 385 N.W.2d 237, 238 (Iowa 1986).

We cannot agree that the circumstances of Benishek's employment with Cody Pharmacy provided the requisite consideration necessary to support an enforceable promise of permanent employment. The record is devoid of any evidence that Benishek gave up prior employment for the job, *see Collins v. Parsons College*, 203 N.W.2d 594, 599 (Iowa 1973), or suffered any other similar loss. *See Moody v. Bogue*, 310 N.W.2d 655, 658–59 (Iowa App.1981), and cases cited therein.

▪ Benishek also contends that her discharge was a violation of public policy because she was falsely accused of theft and dishonesty. As noted in *Northrup v. Farmland Industries, Inc.*, 372 N.W.2d at 196:

[The supreme court] has never expressly recognized a public policy exception [to the employment at will doctrine], although we recently noted its increasing acceptance in other jurisdictions. *See Abrisz [v. Pulley Freight Lines]*, 270 N.W.2d at 455. ...

While we hinted in *Abrisz* that, under proper circumstances, we would recognize a common-law claim for discharge violating public policy, we did not apply it there because the facts did not establish such a violation. We observed, moreover, that "[c]ourts should not declare conduct violative of public policy unless

it is clearly so." *Abrisz*, 270 N.W.2d at 456. It has been observed, in fact, that successful common-law claims for wrongful discharge have been based in large part on violations of independent statutory policy, not those established by court decisions.

In *Northrup*, the Iowa Supreme Court held that a claimant asserting that his employer committed a discriminatory practice must pursue the remedy provided under the provisions of the Civil Rights Act, and therefore, the plaintiff's independent common-law action for wrongful discharge could not be recognized. *Id.* at 197. In *Abrisz*, the supreme court, in ruling that the plaintiff's discharge was not violative of public policy, found it significant that the employer's action in discharging the plaintiff was without malice and that the employee held a position of trust or confidence, which her actions violated.

The record in this case contains no evidence that Cody discharged Benishek out of any feelings of ill will, malice, or bad faith. Benishek makes no claim that Cody knew she was innocent, or had reason to know of her innocence, despite the lack of direct evidence that she was guilty. She never disputed Cody's claim that he made a good faith effort to determine why he was losing money before accusing Benishek and her coemployee of embezzlement. Furthermore, in a case similar to the facts of this case, the supreme court held that the discharge of an "at will" employee under a policy of discharging all employees working a shift when a cash shortage occurs was not contrary to public policy. *See Haldeman v. Total Petroleum, Inc.*, 376 N.W.2d 98, 105 (Iowa 1985).

We see no reason to disturb the trial court's order granting defendants' motion for summary judgment.

▪ II. *Intentional Infliction of Emotional Distress.* Benishek further claims that the trial court erred in granting defendants' motion for summary judgment regarding her cause of action for intentional infliction of emotional distress. She alleges that Cody's actions of confronting her with accusations of embezzlement and ter-

minating her on those grounds caused her to have difficulty sleeping, made her nervous, and made her cry often.

■ The elements of a claim of this tort are:

(1) Outrageous conduct by the defendant;

(2) The defendant's intentional causing, or reckless disregard of the probability of causing emotional distress;

(3) Plaintiff suffering severe or extreme emotional distress; and

(4) Actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Vinson v. Linn–Mar Community School Dist.*, 360 N.W.2d 108, 118 (Iowa 1984). We examine the evidence in its light most favorable to plaintiff in determining whether a jury question was engendered. *Poulsen v. Russell*, 300 N.W.2d 289, 296 (Iowa 1981).

Benishek claims that Cody's verbal accusation that she was embezzling and his statement "to think that I trusted you with my children" constituted the requisite outrageous conduct necessary for this tort action. In *Haldeman*, 376 N.W.2d at 104–05, the supreme court stated that to be "outrageous" the rule is "one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " We do not believe that Cody's statements rise to this level. The evidence is undisputed that Cody's demeanor and conduct throughout the whole matter were clearly not "so extreme in degree as to go beyond all possible bounds of decency" or the kind of conduct "regarded as atrocious, and utterly intolerable in a civilized society." 376 N.W.2d at 103 (citations omitted). Benishek herself testified that Cody did not raise his voice or become violent when he made the statements, and promised to retain the innocent employee if only one employee was found to be involved. He gave both employees two weeks to come to him prior to dismissing them, and gave both employees two weeks' severance pay. When asked where Benishek was, he told patrons that Benishek was retired, which is clearly a charitable gesture.

We find no basis on which Benishek can claim that Cody's conduct amounted to outrageous behavior. We affirm the trial court's order granting defendants' summary judgment on this claim.

■ III. *Defamation.* Benishek's third claim is that the trial court erred in granting defendants' motion for summary judgment based upon her claim of defamation. She claims that Cody's statements were defamation per se and that malice may be presumed. The trial court dismissed Benishek's defamation claim on the grounds that the statements made by Cody were qualifiedly privileged, and that Benishek's evidence of actual malice was insufficient as a matter of law to establish actual malice. We agree with the trial court's conclusion.

In *Vojak v. Jensen*, 161 N.W.2d 100, 105 (Iowa 1968), the Iowa Supreme Court set forth the elements of qualified privilege:

A communication made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable and although the duty is not a legal one.... The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The [qualified] privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within narrow limits.

In the absence of malice an utterance may be qualifiedly privileged, even though it is not true.... But the mere color of lawful occasion and pretense of justifiable end cannot shield from liability a person who publishes and circulates

defamatory matter. Hence a publication loses its character as privileged, and is actionable, on proof of actual malice.

Actual malice requires proof that the statement was made with malice in fact, ill-will or wrongful motive. *Vinson,* 360 N.W.2d at 117.

For many of the reasons stated in section II above, it is clear from the record that Benishek failed to present any evidence from which a jury could be allowed to infer actual malice on the part of Cody. We believe that the essential elements of qualified privilege—good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties—were met. *See Brown v. First Nat'l Bank of Mason City,* 193 N.W.2d 547, 552 (Iowa 1972). As the allegedly defamatory statements were made with a qualified privilege, we affirm the trial court's order granting summary judgment on this issue. *See Brown,* 193 N.W.2d at 552.

We affirm the trial court in toto.

AFFIRMED.